Good morning. May it please the Court. I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Seema Gundu. This is a consolidated appeal, obviously, of three separate cases. I want to start with the 2009 case. At the outset, having reviewed our briefs, there are a couple positions that I frankly don't think we can really sustain. At the outset, I think I can concede that the determination that her testimony was not credible, I think that's supported by substantial evidence. And I also think that substantial evidence supports the government's position that she did, in fact, receive proper advisals. But with respect to the 2009 decision, I still believe that proper advisals regarding the consequences of filing a frivolous asylum application. But nevertheless, I believe that this case has to be remanded because neither the immigration judge nor the board considered the facts surrounding the filing of that frivolous application. And I think that's important. The judge made her determination that the application was frivolous before she heard any testimony. And the testimony that she heard revealed two things. It revealed, one, that she was being abused by her husband. But it also revealed that she had not even seen the application before it had been filed. And in order for an application to be considered frivolous, there has to be a specific finding that the applicant knowingly filed an application containing misrepresentations. She's maintained all along that she didn't know what was in the application at the time. But the day of the interview, she signed something that said that, under oath, that said that she knew the contents of the application and that all representations on the application were true to the best of her knowledge. That's true. So how does that not totally undermine what you're saying right now? Well, it all depends on how you define filing. And the problem here is that because no one grappled with this testimony, neither the immigration judge nor the board weighed in on what does it mean at the time of filing, knowing the filing. But once she signed it that day, why does it matter? Once she's saying, I know everything that's in here and I think it's true, and she signs it that day. Because the application was filed long before that. And the issue is the question, the statutory or the regulatory question, really, because the regulation is what requires a specific finding that you knowingly filed an application. And it's a question of that mens rea. Does that apply at the time of filing? Or later, if you file something and you don't know it's true and then you're coerced into going along with it, does that make it fiverless? But that's a question that nobody's ever grappled with in this case. And you may be right in the end, Your Honor. That might be well the answer. But the problem is that no one ever grappled with it. No one ever grappled with the ‑‑ her testimony also that she ‑‑ So you're saying there was a legal question that the BIA never answered in that first ‑‑ Yeah. And where was that legal question presented? Well, her testimony raised that legal question. But no one argued. I mean ‑‑ Well, actually, yes. See, when it went to the board, the person who was representing her at the board claimed that her testimony should have been considered in evaluating whether or not But they didn't make this legal argument you're making that filed doesn't ‑‑ signing the statement doesn't count as filed. They did in a sense. What they were saying was that the immigration should have considered her testimony that she didn't know that the application contained falsehoods when it was filed. And they maintained that the immigration judge should have considered the abuse. Now, if you look at the board's decision, and this is on page 696, the board deals with this simply by saying, we disagree with the respondent's claim that she was not provided an opportunity to respond to the issues of misrepresentation and that the immigration judge did not consider the circumstances surrounding her falsehoods. That's just wrong. The immigration judge didn't consider the circumstances surrounding her falsehoods because she pretermitted before any of that testimony came forward. And our position is that the board's finding on this is plainly wrong. No one considered this. The board can't consider it in the first instance because it's a factual question. The board doesn't get to make findings of fact. Only an immigration judge can. But I thought you were making a legal argument that filed has to mean at the time rather than when you're sitting in the interview and you sign the document. I think what I'm doing is I'm bolstering the argument that was made to the board and saying that if, in fact, they had considered these facts, as was argued at the board that the judge should have, it would have raised this obvious legal question that no one ever grappled with. But don't we have a case, Kulakshan, I'm not quite sure how to say that, a 2013 case that says that as long as you've had an opportunity to explain your misrepresentations, it can be done in paper. You don't actually have to be given the right to testify. Sure. And I think that that's distinguishable here because whatever they submitted in paper, the declaration that her fire counsel, it didn't say a whole lot. It didn't address these issues. But the bottom line is that the board maintained. But that's her fault. I mean. I'm not disagreeing with you on that. I agree with you on that. But the point is when it went up to the Board of Immigration Appeals, the argument there was that the immigration judge should have considered these other things. We know now that the judge didn't. But the board in its decision expressed. But should have because of your legal argument that filed doesn't mean filed, or filed means something different? Well, for a couple different reasons. You know. Another reason, Your Honor, is that just because the evidence would support a frivolousness finding, an immigration judge doesn't have to make a frivolousness finding. There's some discretion in this. And all the, you know, we see this all the time in immigration court where clearly there's a frivolous application. But the judge refrains from making such a finding because there are other factors involved. And here the immigration judge made her determination that this person should be punished for filing a frivolous application without entertaining, without considering any of these other factors. And when it went up to the BIA, that was the argument that was made by prior counsel. What was the argument that was made? The argument that was made by prior counsel was before the immigration judge rendered this frivolousness finding, she should have considered the surrounding circumstances. And I'm saying, well, on the one hand, if she had considered these surrounding circumstances, clearly a legal issue would have been raised. But even if you disagree with that, certainly if the judge had considered these surrounding factors, she could have decided, well, a frivolousness finding isn't proper in this case. I'm not going to do it. That's a factual statement, though, and you started by saying there's substantial evidence to support the credibility determination, and I agree that that's right. So maybe you should, I would think you should maybe move on from this argument to the other two. The difference between that, Your Honor, is that in this context, when it comes to the burden of proof with respect to whether, for example, she knowingly filed, that's on the government. But your point, I don't think it changes the fact that the judge doesn't have to enter a frivolousness finding. An appeal counsel maintained that these other circumstances are relevant to whether a frivolousness finding was relevant, and the board erroneously said that the immigration judge had, in fact, considered them. That's how they dismissed that argument. But we know now the immigration judge didn't, because she made her frivolousness finding well before the testimony that we're describing here was even rendered. So she couldn't have. So the board's conclusion that this stuff was considered by the immigration judge, it's just plainly wrong. This stuff being what? The testimony that she was abused by her husband. Abused and under-  How about the next two appeals? And actually, there's one other issue, counsel, in your remaining time. Touch on your last argument in your brief about the fact that she's alleging her husband would do, change circumstances. Yeah. At the very end of your brief. Just don't forget to talk about that. The first motion to reopen. Yeah. The board didn't address that, and we feel just for that reason it has to go back. And honestly, if it has to go back, well, yeah, if it has to go back on that issue, well, I guess- Well, I'd like to ask that question. Say we agree with you about the first motion to reopen, that the board did not address her argument about changed circumstances relating to abuse and the new, arguably new threats. If we agree with you about that and think we need to remand on the first motion to reopen, do we need to consider anything else here? Well, that's what I'm trying to think through. I still think that the second motion, you're going to have to deal with that. If you agree with the argument that I was making at the outset, that the board was wrong in saying that the immigration judge had considered these surrounding factors, if you remanded on that point, then our motion to reopen would sort of become a moot point. But what about the other way around? What if we agree with the first motion to reopen needing to go back? Yeah, see, I think then you still have to address the second motion to reopen. And why is that? Because the issue there is it's an issue of equitable tolling. And that came much later. I don't think that, you know, sending it back just simply on the withholding claim, that doesn't address the arguments that are made in the second motion, which all relate to duress. Right, which doesn't – the withholding doesn't get you very far, actually. Right, exactly, yeah. So you have to really go back and undo the whole thing if you're going to do that. But on the second motion to reopen, the motion that we filed, I mean, the board is arguing that, you know, she didn't act with due diligence. And I just – honestly, I don't even understand the decision here, because as the government points out in its brief, under the law of the circuit, an alien is presumed to be acting with due diligence if throughout the proceeding she's pursuing relief. And there's never been a time that she wasn't pursuing relief in this case. But she retained your firm in August of 2010, right? And the second – It's actually July. Okay. So even worse. So July of 2010, and didn't file the second motion to reopen until May of 2011. So it's almost a year. So how is that diligence? Well, see, she's been diligent. You may say we weren't diligent. But what happened here is this. When she retained us, she retained us only for the Ninth Circuit appeal relating to the 09 case. When she came to see us, we said we don't even want to get involved in the motion to reopen you filed, because honestly, it's a mess. But we did – as we began to learn about the violence that had been perpetrated against her, we were interested in filing a sua sponte motion, because we understood that the time for filing a regular motion had passed. So we began to investigate. You know, we couldn't just – while that first motion was pending, we're not going to willy-nilly just go start accusing other lawyers of ineffective assistance of counsel. We need to investigate. We need to find out what really happened here. We sent her to a psychologist. We sent her to a doctor. You know, we got her files, which sometimes can take a long, long time. And then we were still – our plan was still to file a sua sponte motion to reopen. But then as we began to talk – because we couldn't make an argument about equitable tolling. That was the quandary in which we found ourselves. But then on – and she never hired us to make a motion to reopen, because we didn't think one was viable. But then when we met with her on April 21st of 2011, I guess it was, and we explained to her, you know, this is the sua sponte motion, you know, that we want to file. You've never retained us to do that. We don't think it's going to fly. It's going to, you know – and then as we talked about it, she revealed to us the missing element, which was the reason that she didn't include this stuff in her motion was her lawyers had told her it was irrelevant. And it was at that point when we really understood that that ineffective assistance of counsel had affected the contents of her motion. But did you know about the abuse all the way back in the summer of 2010? We knew that she had claimed some abuse, but we had no idea the extent of it. In November – Well, okay, I guess I should ask a different question. She knew about the abuse. So, I mean, maybe if you should have acted faster, we have to impute that to her, right? But she had a 90-day time to file a motion to reopen, and instead it took a year. She – the time – by the time she came to us, the time for filing a motion to reopen had long since passed. But the normal time is 90 days, so it's long since passed and it's 90 days, and here we've got a year from the time that – The normal time had passed. So the motion to reopen thing, we didn't even see that as being on the table. But as the facts began to develop, and especially when we realized that the reason that she didn't include this stuff in her motion was because of the ineffective assistance of counsel, at that point we realized, ah, you actually got a tolling argument. And that's the first that she learned that, in fact, she had a duress argument that could have been made, should have been made, and that's the day she hired us to make the motion, and we filed the motion two or three weeks later. I think I'll reserve the balance of my time. Thank you, counsel. Good morning. Paul Fiorino for the Attorney General. Judge Friedland, as you pointed out, this legal issue about when the immigration – the asylum application was filed, never been presented before. I didn't hear about it until I walked in the room today. With respect to whether or not – Well, it was argued in the briefs here. Yes, but it was never presented to the board. The board didn't have a chance to address that issue. With respect to whether or not Ms. Gundew had a chance to present her duress defense or the defense about Mr. Israr, the petitioners are arguing that she was not given a chance to testify about what happened before the IJ made his decision. Now, ultimately, she did testify about why Mr. Israr told her to lie on her asylum application. Granted, it was after the IJ made the decision, but if you look at what she said in her two affidavits, I think they're on page 2153 and 2020-21 of the record, they're basically the same thing. She says, Israr told me that if I didn't lie, I would be deported. And that's the same thing that she testified to. So the issue is whether or not do we have to send this case back to have her testify? Is she going to say anything different? To the extent that – furthermore, there's no statutory requirement that she be given testimony. In fact, as you pointed out to that one case, that's hard to pronounce. Even if there was a requirement that she have to testify and there was an error because of that, there's no prejudice that because she would have said exactly the same thing. There's no reason to send it back to have her say exactly the same thing, although at this point I don't know if she'd be blaming Israr or Mr. Silva or Mr. Herodas or her husband. It's kind of hard to track her story as it goes because it keeps changing every time she loses in court. She invents a new reason to blame somebody else for the fact that initially she agreed to lie. She said that, and that is in the record. And everything that flows from that, and as the Petitioner even concedes, she lacks credibility, or actually the Petitioner concedes that the adverse credibility finding is supported by substantial evidence. What about the first motion to reopen? Do you think that the Board addressed her argument about domestic violence and changed circumstances, whether it's a change of law based on matter of RA or a change of facts based on new threats? Where did the Board address that argument? I think the Board addressed it in its first decision very clearly. The Board says the immigration judge considered the Respondent's claim to a lack of English skills and for fearing her husband. That's the first Board decision. But I'm talking about the first motion to reopen. Right, right. I'm getting to that, Your Honor. In the second motion to reopen, as I recall, the Board said something to the effect of, well, we've considered that, her defense to that, and we're not going to address it further. I think that's what the Board said in the first motion to reopen. With respect to matter of RA, matter of RA is a completely different claim. Matter of RA is an asylum claim based on women who are abused by husbands and belonging to a particular social group. Right. This would be the ---- But where did the Board say that? I didn't see the Board say we're rejecting the matter of RA argument because it's a totally different claim. And we have to review the Board on what it says. Right? We have to affirm on the grounds given by the Board. We can't just make it up de novo. So I don't see any Board decision addressing that. Well, I'm not ---- One second, Your Honor, please. The question is, had she even presented this completely new claim before, would she have had to have supported her motion to reopen with new and previously unavailable evidence? In other words, if she would want the Board to reopen ---- Well, the Board could have said she didn't submit any affidavits of domestic violence, showing domestic violence, but they didn't say that either. So you're making arguments about what the Board could have said, and I don't see where the Board said any of those things. Well, to that extent, we would say that remanding to the Board to make that finding would be a pointless exercise because the time to have made that argument is past. And there's no ---- She wouldn't have any opportunity to ---- Well, but how do we ---- Why do you say that? Because if it's a changed circumstances argument, so I read her to be saying that there are new threats that her husband is going to have her burned alive, her ex-husband is going to have her burned alive in India if she goes back, that that's a new threat. And the credibility of it perhaps is supported by the fact that she had this domestic violence in the past, which is also supported in the record by medical testimony. So if she has a new threat that's a changed circumstance potentially that doesn't the Board need to address, the fact that she didn't make it before, because she couldn't have made it before if it's new. Well, I would take issue with the fact that there's any credibility to her assertion that there are any new threats to her based on her husband. Her credibility ---- She has severe credibility problems to begin with. The medical evidence based on a psychological evaluation that was for four hours prepared for the purposes of litigation and a medical examination that took about 50 minutes, and all the medical examination concluded that her injuries and scars are consistent with spousal abuse. That's it. It doesn't say that it was responsible for her lying, that it was responsible for ---- Right, but if we assume there was really abuse, so this man is violent toward her husband, and now she's saying in the first motion to reopen that he has now threatened to kill her if she goes to India or have her killed, why is that not something the Board needs to address as a changed circumstance? Why don't we need to remand to have them at least look at that? I would submit that that is an assertion that she's made, and her credibility is Well, I get the arguments you would be making to the immigration courts, and I understand why you'd make those arguments in light of the factual record here. But was that issue actually teed up previously? I mean, normally we don't take arguments at almost like a trial court level, which is kind of what you're doing right now. Can you point to anything in the excerpt of record or anywhere, the record saying, here's the place where the IJ and the BIA addressed these new allegations about acid or whatever it was? And if not, then why wouldn't we want to remand that? And you can make all the arguments you just made. The IJ and BIA will decide what it's going to do. But unless you can point us to something there, it seems like there's this sliver, maybe it's only a sliver, and you have reasons why it should be closed completely, but it seems like that question is still open. Isn't it, counsel? Your Honor, on the top of my head, I cannot point the Court to a specific place where the Board specifically addressed this brand new claim made for the first time in a motion to reopen many years after. Remember, she was divorced in 2004, and I guess she's making this claim six years later. I can't point the Court to a place where the Board specifically addressed that. Do you know of any authority that would permit this Court to say, because it was six years later and it seems, I don't want to use the word frivolous, but it seems unlikely to prevail that, therefore, it doesn't have to be remanded? In a sense, a harmless beyond debate type argument. Are you aware of any authority that allows us to do something like that? A specific case, I don't know off the top of my head. I would say, though, you know, in terms of pure practicality and in terms of the burden that she would have to show if she had gone, if she goes back to show that this evidence is previously unavailable and it's material, I would say the chances are very unlikely of her prevailing on that claim. You know, with respect to the ineffective assistance of counsel that she has twice raised against Mr. Herodas, I'd ask the Court to consider the fact that she was quite aware of the fact that she had endured spousal abuse very early on. She first alleged spousal abuse in 2008, and in the brief that she filed to the Board of Immigration Appeals written by Mr. Herodas, she, through Mr. Herodas, uses the spousal abuse as a means of mitigating the lies and false testimony that she had previously given back in 2002. So she, Judge Friedland, you're right, she was aware that she had been abused. And our position is that she was also quite capable of making arguments to an attorney that, hey, I've been abused. This isn't my fault. My husband abused me. Isra forced me to do it. But don't we have to, for the second motion to reopen, don't we have to take her factual allegations as true? Isn't that what the Court held in another word, and I can't pronounce, Avadian and other cases, that we have to take her allegations as true at this point? And one of her allegations is that her attorney had told her that the domestic abuse was not relevant. So if we take that as true, how do we get around that? Well, I would point the Court to look at the response that Mr. Herodas made to the case. He said that he never said anything of the sort. I think it would be quite, I mean, quite a stretch of imagination to think that an attorney would say to her, hey, you can't say anything about the spousal abuse. It's totally irrelevant. But most importantly, she... Well, wasn't the attorney, I mean, the attorney might have had a conflict, right? Was the attorney also representing her ex-husband? I'm not aware that he was. I think he was in jail at the time. I'm not really sure. But if you look at page 735 of the second administrative record for the third board decision, that is where Mr. Herodas is making his brief to the board, and that's where he's specifically talking about spousal abuse. So I would say that... Where is that? In the second administrative record that includes the third or the second untimely motion to reopen the third board decision. It's his brief to the board, and it's on May. The date is May 13th, 2008, and the page is 735. That's where Mr. Herodas, writing to the board, is talking about the spousal abuse. So I would say that if the law is that you have to take everything that she says is true, I don't see how you possibly logically can, because it's, on the record, it's not true. But we think what's more dispositive of her is a lack of due diligence on the second untimely motion to reopen. As you pointed out, Judge Friedland, she was quite aware of all of these problems early on. When she went to Mr. Job's office, she waited an entire year. And I think it's – I don't understand her argument that she was pro se in her first motion to reopen, and using that as a crutch to excuse her from raising these issues that she should have raised earlier. It's one of the best pro se briefs I've ever seen. I don't understand that argument at all. But where did – this is very complicated. Maybe too complicated. But where did the Board deal with the issue of spousal abuse? The Board first considered spousal abuse as a fact in mitigation of her lies when it considered the immigration judge's decision on pretermission, and that would have been – I don't have a page record for you, but it's the second page of the Board decision at the very top. The immigration judge considered the Respondent's claim to lack of English. What date of the Board decision? The date? It is October 28th, 2009. Can you see the second page? Yes, Your Honor. So the Board says lack of English and fearing her husband. Then it says her prominence of the evidence supports the immigration judge's conclusion. So when the Board considered and affirmed the immigration judge's decision. Fear of her husband. Yes. Yes, Your Honor. So the husband, you know, played an early part, a part in this drama quite early, as early as fact, as I said, 2008, when Mr. Herita's first file was appealed to the Board. So to the extent that the Petitioner has conceded that, as to the frivolous finding that there was a material misrepresentation, that she got the complete warnings, we would ask the Court to affirm the finding that she did, in fact, find a frivolous asylum application. To the extent that, as I understand Petitioner's conceding that the adverse credibility finding is supported by substantial evidence, the need to remand to further consider withholding and CAT, there is no need to do that because she lacks credibility. And moreover, because the Court should affirm the frivolousness finding, there's no need to remand for her adjustment of status application because, as a matter of law, she'd be statutorily ineligible for that benefit. Thank you, counsel. Thank you. Browning, you're exactly right. The Board's decision has to be evaluated based on the reasons set forth by the Board itself. Now, when this case was before the Board, and this is on page 735 of the record, prior counsel put forth a claim that said the IJ failed to consider all mitigating relevant factors. In response to that, the Board said … Now, which decision are you … This is the 2009 decision. In response to that claim that she had failed to consider all the mitigating factors, the Board simply said the immigration judge did, in fact, consider all the surrounding circumstances, as counsel is pointing out here, including her fear of her husband. But we know that's wrong because that testimony came before … that testimony came after the judge made the frivolousness finding. That's the Board's logic. The Board's logic is wrong. The Board's decision can only be sustained on the logic it set forth. If that logic is wrong, which it is, you have to vacate and remand on that point. Now, if it goes back on that point, the issue of our motion to reopen becomes a moot one because when this case goes back, we can, at that point, make a whole fresh motion to remand. And that's the point that I'm trying to make here about the immigration judge should have considered whether, you know, she was being abused by her husband, should have considered whether she knew at the time of filing that was frivolous. She didn't. The Board said the immigration judge considered that. The judge didn't. So based on what you're saying here, the decision stands or falls based on the Board's reasoning. The Board's reasoning is wrong. You've got to vacate and send it back. When it goes back to the Board, at that point, we can resuscitate our motion. Which decision are you saying was wrong? It's the 2009 decision, Your Honor. And it's down at the bottom of that page. If you look at page 735 of the record, that's where the argument was made by prior counsel, that the judge failed to consider all the mitigating circumstances. On page 696 and 697 of the record, the Board's only response to that is that, yes, in fact, the immigration judge did consider these things. We know that's wrong. So the Board's decision can't be sustained on that basis. It's got to be vacated, at least on that point, and sent back. This is an easy resolution of the case. That means our motion to reopen becomes moot because when it goes back, we can reassert that motion at the Board. Any further questions? I have lots of questions, but I'm not sure how to phrase this. The record in this case is very complex. Yes, it does, Your Honor. But honestly, I believe this is the key to the case, and I believe it's an easy resolution. Would you just explain once more, because I'm ‑‑ Well, the argument that was made at the Board, we know that the Board had, you know, as you're saying, the Board's decision stands or falls based on its own reasoning. The argument that was put forth to the Board by prior counsel, and this is again is at page 735, is that the immigration judge failed to consider all the mitigating factors, including the violence against ‑‑ perpetrated by her husband and the fact that she didn't understand what was in the application when it was filed. The Board is not in a position to make independent findings of fact. It reviews the immigration judge's findings of fact. Sorry. Wait a second. I'm just looking at this. Yeah. Maybe I have the timing wrong, but she ‑‑ they sent it back for her to be able to give her a rebuttal. So when are you saying they didn't ‑‑ Well, when it went back, Your Honor, what happened is that the immigration judge again made a frivolousness finding before she heard any testimony. If you look at the chronology here, the judge ‑‑ Well, but then at that point, that's ‑‑ how is that not ‑‑ so she had an opportunity to file, I mean, when it was sent back on the remand the first time, couldn't she have filed it in writing? Why did ‑‑ she doesn't have a right to have a hearing. So ‑‑ Well, that's what prior counsel was arguing. So when it went back to the Board, prior counsel resuscitated that claim, and it argued to the Board that the judge erred in refusing to ‑‑ in failing to consider these factors. And on appeal here, the government is saying, in fact, the Board did consider those factors. But we know that's not true, because the frivolousness finding was reentered before the judge heard any of that testimony. But that's her fault for not putting it in a brief on remand. No. No, Your Honor. We're talking about what happened at the Board here. The Board dismissed this argument. No, no, no, no. So it went up to the Board. They said she didn't have a chance to respond to the allegations of misrepresentation. So it went back. At that point, she could have written to them and said, the reason I did this is because I was abused. Instead, you're saying she didn't have a chance ‑‑ they didn't consider it. But she didn't offer it in writing, which was the only thing she had the right to do at that point. What she did is she asked for an evidentiary hearing on that point. The judge denied it. Then there was a hearing conducted where all these things came out. And because that came out after the judge had made a frivolousness finding, counsel below argued that the immigration judge should have considered those ‑‑ basically should have reopened the issue and considered those mitigating factors. The Board rejected that argument by simply saying, well, the immigration judge did in fact consider those factors. When that's not the case, she never did. And because the Board's logic on that point is completely wrong, you can't sustain that part of the Board's decision. So that just has to get remanded back. And when it gets remanded back, our motion to reopen becomes moot because at that point we can file a motion to remand. Honestly, I ‑‑ I don't know how many bells we can unring here. Yeah. Well, if you look at page 735, Your Honor, where the argument was made and then look at the decision on 696 and 697, you're going to see that the Board just blew that part of the appeal. And to be clear, counsel, you're talking about excerpts of record 735. Yeah. It's not excerpts of record. It's the most recent administrative record. That's what I mean. Yeah. Because there are two administrative records. Okay. It makes this very confusing. But it's the most recent one on page 735. Okay. Thank you. Thank you. All right. Thank you, counsel.
judges: SCHROEDER, OWENS, FRIEDLAND